# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                            No. 25-CR-570-KWR

JAMES JULIAN,

        Defendant.

## DEFENDANT'S OPPOSED MOTION FOR RELEASE PENDING SENTENCING
### *(For Ruling Before a Magistrate Judge )*

COMES NOW Defendant James Julian, by and through Assistant Federal Public Defender Martin Juarez, pursuant to U.S. Const. Amend. VIII, 18 U.S.C. §§ 3143(a) and 3145(c), *U.S. v. Kinslow*, 105 F.3d 555 (10th Cir. 1997), and *United States v. Garcia*, 340 F.3d 1012 (9th Cir. 2003), and respectfully moves this Court, over the opposition of the United States, to permit his release pending sentencing. Specifically, Mr. Julian asks to be authorized for consideration to return to any eligible halfway house or to any residential treatment center. As grounds, Mr. Julian states:

1.      Counsel has spoken with Assistant United States Attorney Meg Melick and the United States opposes Mr. Julian's release pending sentencing.

2.      Mr. Julian's crimes of conviction do involve violence, however, there are exceptional circutstances meriting his release. Mr. Julian has proven he is not a danger to the community or to the identified victims, that he is not a a flight risk, and that he will

diligently follow his conditions of release if granted this opportunity. Mr. Julian has not made any effort to contact the alleged victim nor has he attempted any third-party contact with the alleged victim.Mr. Julian has not received an opportunity to have his liberty while litigating this case. There have been no filed reports of Mr. Julian misbehaving or violating any jail policy during his incarceration.

## APPLICABLE LAW

The Bail Reform Act provides that pending sentencing, the presumption is that a defendant will be detained, "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). A defendant must rebut the presumption of detention with clear and convincing evidence that he is not a flight risk or a danger to any person or the community. *See* 18 U.S.C. § 3143(a)(1)(imposing a "clear and convincing evidence" standard); Fed. R. Crim. P. 46(c)("the burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."); *see also United States v. Johnson*, 652 Fed. Appx. 619 (10th Cir. 2016)(unpublished)(citing the same).

If, however, the offense of guilt is a "crime of violence," the mandatory detention provisions of Section 3142(a)(2) apply. *See* 18 U.S.C. §§ 3143(a)(2) and 3156(a)(4)(defining "crime of violence"). Even if the mandatory detention provisions apply, the district court may nonetheless "consider whether exceptional reasons exist to

release a defendant under § 3145(c)." *United States v. Jones*, 979 F.2d 804 (10th Cir. 1992); *United States v. Dahda*, 772 Fed. Appx. 730 (10th Cir. 2019)(unpublished).

Congress added the "exceptional reasons" sentence to 3145(c) when Congress added the mandatory provisions of § 3143(a)(2) and (b)(2): "a person subject to detention pursuant to section 3143(a)(2) 'who meets the conditions of release set forth in sections 3143(a)(1) or (b)(2), may be ordered released under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.'" 18 U.S.C. § 3145(c); *United States v. Carr*, 957 F.2d 1239, 1240 (5th Cir. 1991). The addition of the "exceptional reasons" provision "was apparently designed to provide an avenue for exceptional discretionary relief from those provisions." *Carr*, 957 F.2d at 1240.

"[E]xceptional means clearly out of the ordinary, uncommon, or rare." *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007). The process for determining whether exceptional reasons exist is a "fact-intensive inquiry." *United States v. Green*, 250 F. Supp. 2d 1145, 1149-50 (E.D. Mo. Mar. 12, 2003); *United States v. Luevano*, No. 3:19-CR-581-B(1), 2021 WL 4148358, at *3 (N.D. Tex. Sept. 13, 2021). The Tenth Circuit has not published a definitive list of factors a court must consider in deciding the exceptional reasons issue. It is clear, however, that the magistrate court has "broad discretion…to consider all particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct." *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003); *see also United States v. Lea*, 360 F.3d 401, 403 (3d Cir.

2004)("The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.").

In *Garcia*, 340 F.3d at 1016, the Ninth Circuit agreed with the observations of the trial court, "[t]he parameters for determining when 'exceptional circumstances' exists remains unclear because the term is not defined within the statute, nor has it been given any precise definition by way of appellate review to date." The Ninth Circuit considered the legislative history which is "sparse and uninformative." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). Rather than limiting the factors that the court should consider, the Ninth Circuit determined Congress "placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon the broad 'experience with the mainsprings of human conduct.'" *Garcia*, 340 F.3d at 1018. In order to provide more guidance, the Ninth Circuit provided certain illustrations, each in themselves might be exceptional, which are helpful in consideration of Mr. Julian's case.

For instance, it might be exceptional where the defendant's criminal conduct was aberrational: "where the the defendant with no prior history of violence may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance"; "where a defendant may be guilty of a violent crime, and yet may not be the type of violent person for whom Congress intended the mandatory detention rule to apply"; "where the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail." *Id.*, 340 F.3d at 1019.

Mr. Julian has minimal involvement with the criminal justice system according to the Pretrial Services Report. Doc. 11.

The "nature of the violent act itself may also be significant" and there may be various factors to lead a court to believe that the particular act committed by the defendant, while falling within one of the mandatory detention categories, is sufficiently dissimilar from the others in that category to warrant a finding of exceptional reasons. *Id*.  For example, "if the act was violent, but did not involve any specific intent"; or "if it did not involve any threat or injury to persons"; "if the act of violence or the circumstances surrounding the act were highly unusual," like the mercy killing raised by the Justice Department Letter. *Id*.  Here, there was a drunken fight. This does not indicate that Mr. Julian is incorrigible. Rather, in demonstrates the necessity for alcohol abuse treatment.

The length of the prison sentence, both the maximum and the sentence imposed may be relevant:  "the length of the sentence may be a proxy for the seriousness of the crime." *Id*.  The Ninth Circuit considered the primary purpose of the Mandatory Detention Act – to incapacitate violent people – and suggested that its purpose was "only weakly implicated where the sentence imposed is very short, because regardless of whether the defendant is released pending appeal, he will soon be free." *Id*.  The Court noted that "in such a circumstance, the defendant could be forced to serve most of or all of his sentence before his appeal has been decided.  Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal." *Id*. The same unjust detention could result pending sentencing. *see United States v. Smith*, 34

F.Supp.3d 541, 554 (W.D. Pa. July 22, 2014)(suggesting, "[T]o avoid emasculating the mandatory detention statute, exceptional reasons review is limited to determining whether remanding the defendant to custody until sentencing would be tanatamount to subjecting individuals to unjust detention."). Given Mr. Julian's record while in custody does not show that he is a flight risk or a danger to the community, and that Defendant has not attempted to contact the alleged victim or his family and that Defendant is otherwise compliant with jail policies. Therefore, there are exceptional circumstances justifying Mr. Julian's release.

Other exceptional reasons identified by Circuit and trial-level courts are also informative. For instance, in *United States v. Charger*, 918 F.Supp. 301, 303-04 (D.S.D. 1996), exceptional reasons were found where young first-time offender was in need of guidance available to him at his father's home and was participating in out-patient alcohol treatment, such that to imprison him "would be counterproductive and would harm defendant and the interests of society." In *United States v. Cantrell*, 888 F.Supp. 1055, 1057-58 (D.Nev.1995), exceptional reasons were found where Native American defendant who was subject to dual prosecution by federal and tribal courts and "[m]ore importantly, while on release, [defendant was] participating in a substance abuse program, and he would benefit more from outpatient treatment at this time than from incarceration," his presentence incarceration might effect his opportunity to qualify upon sentencing for the "shock incarceration program" and the nature of the offense made him a very unlikely threat to cause any harm to the community pending sentencing.

In *United States v. Pedro Pablo Ruiz*, No. 1:15-cr-00059-MV-1 (Doc. 26), the district court found exceptional reasons in a case involving a a defendant convicted as a first time offender of a C-Level drug offense which carried no mandatory minimum based upon the defendant's unique history and characterstics.  The Court referred to the history and characteristics of the defendant which included the defendant's life-long struggle to overcome the effects of a traumatic brain injury, his minor role in the offense having been coopted by drug dealers taking advantage of his intellectural limitations shortly after his grandmother's funeral, and his immediate consent to a property suearch when confronted by DEA Task Force Officers, his enrollment in vocational courses at the time of the offense, and demonstration while on pretrial release that he could conform to an environment characterized by clear structure and strong emotional support (having complied with all conditions of release, obtained employment, and taking advantage of all counseling opportunities).

In *United States v. Kaquatosh*, 252 F.Supp.2d 775, 778 (E.D.Wis. 2003), the district court noted that the statute does not "preclude releasing a defendant based on "purely personal circumstances," just that "the defendant's situation is sufficiently unique to make detention pending sentencing inappropriate."  The court determined Kaquatosh's detention would be inappropriate for four reasons:  (1) the defendant had done exceptionally well while on pretrial release (completing inpatient treatment for substance abuse, all recent tests were negative for the presence of alcohol and controlled substances, and compliance with the rules of halfway house); (2) defendant obtained employment and performed

excellently in his job; (3) the defendant wanted to obtain psychological evaluation and treatment prior to imprisonment which was endorsed by Probation and could be promptly arranged ("reflecting a sober and relatively detached reflection on circumstances which had led to his facing a prison sentence and to demonstrate an interest in avoiding a similar situation in the future"); and (4) the defendant's ability to regularly send money home to benefit his family which evidenced his stable employment ("something which had eluded him in the past") and growth on the defendant's part.

Mr. Julian respectfully requests the Court authorize his release after entry of a guilty plea. As presented here and will be further argued at the time of the motion hearing, Mr. Julian is not a flight risk and he does not pose a danger to the safety of any other person or the community if he were to be re-released on the same conditions as his pretrial release pending sentencing.

**WHEREFORE** Defendant Julian respectfully requests the Court allow him to be released pending sentencing in this case to a halfway house or to a residential treatment facility.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd. NW, Suite 501
Albuquerque, NM 87102
T: (505) 346-2489 | F: (505) 346-2494
Martin_Juarez@fd.org

*/s/ Electronically filed August 6, 2025*
MARTÍN JUÁREZ
Assistant Federal Public Defender
Attorney for Mr. Julian

8